*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

JAMIESON BRYAN WOOLARD,

        Defendant-Appellant.

UNPUBLISHED
April 30, 2026
2:42 PM

No. 369513
Genesee Circuit Court
LC No. 2022-049604-FH

Before: RIORDAN, P.J., and REDFORD and PATEL, JJ.

PER CURIAM.

Defendant appeals by right his three jury-trial convictions of third-degree criminal sexual conduct (CSC-III), MCL 750.520d(1)(a) (victim at least 13 years of age and under 16 years of age), for which he was sentenced as a second-offense habitual offender, MCL 769.10, to concurrent terms of 162 to 270 months in prison. For the reasons stated in this opinion, we affirm.

## I. BACKGROUND

This case arises from a series of sexual assaults committed by defendant against a 14-year-old victim. Before trial, the prosecutor filed a notice of intent under MCL 768.27b to introduce a transcript of testimony taken from a 2009 preliminary hearing in which defendant was charged, and eventually convicted, of sexually assaulting a different victim who was 11 years old at the time.[1] The prosecutor sought to introduce this testimony as other-acts evidence related to sexual assault and to demonstrate that defendant had a propensity to sexually assault young male victims, including how he would assault them.

As indicated by the transcript, the 11-year-old victim testified that he knew defendant because defendant had been introduced to him as his girlfriend's "uncle." The 11-year-old victim

---

[1] As a result of this incident, defendant subsequently pleaded guilty or no contest to one count of second-degree criminal sexual conduct (CSC-II), MCL 750.520c(1)(a) (victim under the age of 13 years), in 2010.

further testified that he was staying at his girlfriend's house when defendant told him that he was drunk and that he wanted to see 11-year-old victim's penis. Defendant then touched the 11-year-old victim's penis over his clothes. The incident only ended after the mother of 11-year-old victim's girlfriend entered the room.

In response to the prosecutor's notice of intent, defendant filed a six-page written objection to admission of the other-acts evidence. Defendant argued that this evidence was unfairly prejudicial because he would be convicted on the basis of his status as a previously convicted sex offender. He also argued that his prior acts against 11-year-old victim were dissimilar to the acts alleged by 14-year-old victim in this case. Specifically, defendant argued that his acts against 11-year-old victim occurred once while the child was clothed, whereas the conduct against the 14-year-old victim here involved multiple alleged instances of penetration. Defendant also highlighted the difference in the age of the children and the length of time that had passed since his CSC-II conviction.

In addition, during pre-trial proceedings, the prosecutor and defendant engaged in lengthy plea negotiations. Over at least two hearings, defendant consistently stated on the record that he had received plea offers from the prosecutor. Invariably, however, defendant would reject the offer before him. Each time defendant rejected an offer, defendant explained that he had considered the offer after conferring with his attorney but expressed his desire to go to trial.

A few weeks before trial, the trial court entered a written order overruling defendant's objection to admission of the other-acts evidence. In its order, the trial court stated that it had "reviewed the submissions by the parties and the relevant law," "the statutory requirements under MCL 768.27b have been met," "the evidence is relevant under MRE 403," and "the offered testimony is not unduly prejudicial."

At trial, the 14-year-old victim testified that he met defendant through his girlfriend, and that defendant was introduced to him as the girlfriend's adoptive uncle. The 14-year-old victim would visit his girlfriend occasionally at defendant's house, and he testified about three separate incidents of sexual assault. The 14-year-old victim testified that the first incident occurred in the driveway of an abandoned building,[2] and he testified about another incident occurring in a cemetery. The third incident occurred in defendant's house.

On the basis of its prior ruling, the trial court admitted the transcript of the 11-year-old victim's testimony from the 2009 preliminary hearing into evidence. The transcript was read before the jury. The jury found defendant guilty of all three charged counts of CSC-III.

Following sentencing, defendant filed a claim of appeal and was assigned appellate counsel. Appellate counsel filed a motion in the trial court for a new trial and a *Ginther*[3] hearing to further develop the factual record. In that motion, defendant essentially raised two arguments. First, defendant argued that he was entitled to specific performance of an alleged plea offer and

---

[2] The victim also implied that the assault may have occurred in the building itself.

[3] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

agreement. According to defendant, in July 2023, the prosecutor sent the following e-mail to trial counsel:

> At this point, the victim would be okay with a year in jail and as much probation as we can sign him up for. Since it's charged as 3rd, probation isn't an option unless we amend it to CSC 2nd. I don't think the victim would object to changing the charge provided he signs up for some jail time and has no contact with the complainant as part of probation. I forget how much, if any jail credit he has. I also don't remember the guidelines off the top of my head[.]

Defendant further asserted, through his trial counsel's affidavit, that on August 9, 2023, defendant rejected a plea offer on the record; on September 29, 2023, defendant informed trial counsel that he would accept the most recent plea offer; trial counsel "immediately" informed the prosecutor that defendant would accept the plea offer; and on October 6, 2023, trial counsel was informed by the prosecutor that the plea offer was revoked "because the victim was not in agreement." Trial counsel further averred that "[t]o the best of my recollection and upon consultation with my file the plea offer involved an amendment to Criminal Sexual Conduct in the Second Degree with an agreement for one year in jail along with a probationary sentence." Accordingly, defendant asserted in his motion for a new trial that he "entered into a contract with the prosecution" and, therefore, was entitled to specific performance of that contract, i.e., the plea agreement.

As his second argument, defendant asserted that trial counsel was ineffective for failure to more forcefully and substantively argue in her written objection to the other-acts evidence under MCL 768.27b that the evidence should be inadmissible. Defendant asserted that, if trial counsel had raised more extensive arguments in her written objection, the trial court "would have likely ruled the evidence inadmissible."

The trial court held a hearing on the motion for a new trial. After hearing arguments from both parties, the trial court denied the motion for a new trial and rejected defendant's request for an evidentiary hearing.[4]

This appeal now follows.

## II. ANALYSIS

On appeal, defendant raises four issues that largely reflect his claims of error previously asserted in his motion for a new trial. As explained below, we conclude that none of these issues warrant relief.

---

[4] Defendant subsequently filed a motion to remand for an evidentiary hearing in this Court. That motion was denied "without prejudice to a case call panel of this Court determining that remand is necessary once the case is submitted on a session calendar." *People v Woolard*, unpublished order of the Court of Appeals, entered May 14, 2025 (Docket No. 369513).

## A. SPECIFIC PERFORMANCE

Defendant first argues that he is entitled to specific performance of the purported plea offer that was tendered by the prosecutor. We disagree.

This Court reviews for clear error a trial court's ruling on specific performance of an unfulfilled plea agreement. See *People v Hannold*, 217 Mich App 382, 388-389; 551 NW2d 710 (1996); *People v Abrams*, 204 Mich App 667, 673; 516 NW2d 80 (1994). Likewise, a trial court's factual findings are reviewed for clear error. *People v LeBlanc*, 465 Mich 575, 579; 940 NW2d 246 (2002). "Clear error exists when the reviewing court is left with a definite and firm conviction that a mistake was made." *People v Blevins*, 314 Mich App 339, 348-349; 886 NW2d 456 (2016).

"Contractual analogies may be applied in the context of a plea agreement, although strict adherence to contractual theories and principles peculiar to commercial transactions may not be applicable." *People v Swirles (After Remand)*, 218 Mich App 133, 135; 553 NW2d 357 (1996). "In other words, contractual theories will not be applied if to do so would subvert ends of justice." *Id*.

In Michigan, prosecutors have broad authority to determine whether to enter into a plea agreement with a defendant, whether to prosecute, and what charges to file. See *People v Jackson*, 192 Mich App 10, 15; 480 NW2d 283 (1991). As such, "[t]he authority of a prosecutor to make bargains with defendants has long been recognized as an essential component of the efficient administration of justice." *Id.* at 14-15, citing *Santobello v New York*, 404 US 257, 260-261; 92 S Ct 495; 30 L Ed 2d 427 (1971). When a defendant enters a guilty plea in exchange for the prosecutor's promise of lenience, and the promise remains unfulfilled, courts generally will allow the plea to be withdrawn. See *People v Hall*, 399 Mich 288, 290; 249 NW2d 62 (1976).

However, specific performance of a plea agreement as a remedy is not available until after the defendant has pleaded guilty or performed part of the plea agreement to his prejudice. *People v Heiler*, 79 Mich App 714, 719 n 4; 262 NW2d 890 (1977). That is, "[a] defendant's right under [*Santobello*] to have the prosecutor perform his promise in a plea bargaining agreement does not inure to a defendant until after he has pled guilty or performed part of the plea agreement to his prejudice in reliance upon the agreement." *In re Robinson*, 180 Mich App 454, 459; 447 NW2d 765 (1989). "Detrimental reliance" in the context of plea agreement means that "no other remedy is available which will return defendant to the position he enjoyed prior to making the agreement at issue." *People v Gallego*, 430 Mich 443, 456 n 10; 424 NW2d 470 (1988). "[A] factual record must support speculative allegations that a promise remains unfulfilled." *People v Davis*, 74 Mich App 624, 626; 254 NW2d 335 (1977).

In this case, defendant is not entitled to relief for several reasons. First, defendant has not sufficiently shown the existence of a plea offer that would be subject to his acceptance. Rather, defendant quotes an e-mail from the prosecutor in July 2023 wherein defendant potentially would be subject to "a year in jail and as much probation as we can sign him up for." However, when that e-mail is reasonably read in context, it is indicative of on-going plea negotiations, not an affirmative plea offer that would be subject to immediate acceptance. For example, the e-mail indicates that the prosecutor would want to confer with the victim beforehand, that the CSC-III charges perhaps would have to be reduced to CSC-II, and that the hypothetical one year in jail was

subject to an unknown amount of jail credit and uncertain sentencing guidelines. While we do not strictly apply contractual theories to plea offers and agreements, see *Swirles*, 218 Mich App at 135, the e-mail quoted by defendant is too indefinite and tentative to be considered an affirmative, binding offer.

Second, even assuming the existence of an affirmative, behind-the-scenes plea offer from the prosecution, the timeline of events indicates that defendant invariably rejected any and all plea offers that were given to him. During the August 2023 hearing, the prosecutor informed the trial court that some preliminary plea negotiations had occurred. However, the prosecutor stated that all "offers [were] revoked today as the defendant has declined." Trial counsel confirmed that this was true and added that after discussing the matter with her client, he had the "desire to take this case to trial." This rejection also is confirmed by the affidavit from trial counsel. No further action was taken in open court regarding a plea offer, as the next proceeding in open court was the beginning of jury trial on October 10, 2023.

Third, assuming that the parties did, in fact, enter into an off-the-record plea agreement, it would not be enforceable under MCR 2.507(G),which provides that "[a]n agreement or consent between the parties or their attorneys respecting the proceedings in an action is not binding unless it was made in open court, or unless evidence of the agreement is in writing, subscribed by the party against whom the agreement is offered or by that party's attorney." Here, as noted, there was no agreement placed on the record in open court, and the e-mail quoted in defendant's motion for a new trial does not reflect that such an agreement was reached.

Fourth, as the trial court correctly ruled from the bench when denying defendant's post-trial motion, "there hasn't been a demonstration that there was detrimental reliance." In other words, even assuming that the parties entered into a plea agreement, defendant has not shown that he acted in reliance on that plea agreement, such that he was, or would be, prejudiced by the trial court's failure to enforce it. See *In re Robinson*, 180 Mich App at 459.

For these reasons, defendant is not entitled to relief for this issue.[5]

## B. OTHER-ACTS EVIDENCE

Defendant argues that the trial court abused its discretion by admitting the other-acts evidence regarding the 11-year-old victim under MCL 768.27b. He contends that the trial court failed to properly address the considerations outlined in *People v Watkins*, 491 Mich 450; 818 NW2d 296 (2012), as those considerations weigh against admissibility. We disagree.

"A trial court's decision to admit or exclude evidence is reviewed for an abuse of discretion." *People v Thorpe*, 504 Mich 230, 251; 934 NW2d 693 (2019). "The decision to admit

---

[5] Defendant does not argue, in connection with these facts, that he is entitled to relief under cases such as *Lafler v Cooper*, 566 US 156; 132 S Ct 1376; 182 L Ed 2d 398 (2012), for ineffective assistance leading to rejection of a plea offer. Regardless, we note that the record strongly suggests that defendant himself choose to proceed to trial after discussing the advantages and disadvantages of doing so with his counsel.

evidence is within the trial court's discretion and will not be disturbed unless that decision falls outside the range of principled outcomes." *Id.* at 251-252 (quotation marks and citations omitted). "A decision on a close evidentiary question ordinarily cannot be an abuse of discretion." *Id.* at 252.

At the time of trial, MCL 768.27b provided, in relevant part, as follows:

(1) Except as provided in subsection (4), in a criminal action in which the defendant is accused of an offense involving domestic violence or sexual assault, evidence of the defendant's commission of other acts of domestic violence or sexual assault is admissible for any purpose for which it is relevant, it if is not otherwise excluded under Michigan rule of evidence 403.

(2) If the prosecuting attorney intends to offer evidence under this section, the prosecuting attorney shall disclose the evidence, including the statements of witnesses or a summary of the substance of any testimony that is expected to be offered, to the defendant not less than 15 days before the scheduled date of trial or at a later time as allowed by the court for good cause shown.

* * *

(4) Evidence of an act occurring more than 10 years before the charged offense is inadmissible under this section unless the court determines that 1 or more of the following apply:

(a) The act was a sexual assault that was reported to law enforcement within 5 years of the date of the sexual assault.[6]

"The language of MCL 768.27b clearly indicates that trial courts have discretion to admit relevant evidence of other domestic [or sexual] assaults to prove any issue, even the character of the accused, if the evidence meets the standards of MRE 403." *People v Cameron*, 291 Mich App 599, 609; 806 NW2d 371 (2011) (quotation marks and citation omitted). "MCL 768.27b is an exception to the general bar against propensity evidence in MRE 404(b) . . . ." *People v Wade*, ___ Mich App ___, ___; ___ NW3d ___ (2025) (Docket No. 369106); slip op at 10.

At the time of trial, MRE 403 provided that relevant evidence may be excluded "if its probative value is substantially outweighed by the danger of . . . unfair prejudice . . . ."[7] Evidence is unfairly prejudicial under MRE 403 if there exists a danger "that marginally probative evidence will be given undue or preemptive weight by the jury," but the prosecution is not required "to use the least prejudicial evidence to make out its case." *Cameron*, 291 Mich App at 611 (quotation marks and citation omitted). "The prior act does not have to be identical to the charged offense to

_____

[6] MCL 768.27b was amended by 2024 PA 184 with an effective date of April 2, 2025. These revisions did not substantively alter the provisions of the statute relevant to this appeal.

[7] Several rules of evidence, including MRE 403, were revised effective January 1, 2024. However, the substance of MRE 403 remains unchanged.

be relevant and possibly admissible under MCL 768.27b." *Wade*, ___ Mich App at ___; slip op at 10 (cleaned up).

In *Watkins*, our Supreme Court outlined the following nonexhaustive factors that may be addressed when determining the admissibility of other-acts evidence under a closely related statute, MCL 768.27a:

> (1) the dissimilarity between the other acts and the charged crime, (2) the temporal proximity of the other acts to the charged crime, (3) the infrequency of the other acts, (4) the presence of intervening acts, (5) the lack of reliability of the evidence supporting the occurrence of the other acts, and (6) the lack of need for evidence beyond the complainant's and the defendant's testimony. [*Watkins*, 491 Mich at 487-488.]

Courts, however, are not required to apply the *Watkins* factors to other-acts evidence under MCL 768.27b because these factors provide a "tool to facilitate, not a standard to supplant," a trial court's MRE 403 analysis. *People v Uribe*, 499 Mich 921, 921 (2016). Nevertheless, this Court regularly has applied the *Watkins* factors to issues of admissibility under MCL 768.27b and, by extension, MRE 403. See, e.g., *People v Berklund*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 367568); slip op at 10-11. Importantly, because MCL 768.27b favors the admission of propensity evidence, "[w]hen applying MRE 403 to evidence admissible under MCL 768.27b, courts should weigh the propensity inference in favor of the evidence's probative value rather than its prejudicial effect." *Id.* at ___; slip op at 10.

Here, the trial court did not abuse its discretion by admitting the transcript of the 11-year-old victim's testimony at trial because the *Watkins* factors weigh in favor of admissibility. Of the six factors listed, only two factors arguably weigh against admissibility. Defendant correctly notes that, regarding the second factor, approximately 13 years passed between his sexual assault against the 11-year-old victim and his acts against the 14-year-old victim in this case. Thirteen years is a substantial amount of time. But see *Berklund*, ___ Mich App at ___; slip op at 10 (finding no abuse of discretion when a trial court determined that a nearly 20-year gap between sexual assault offenses was not dispositive because other factors weighed in favor of admissibility). Moreover, concerning the third factor, evidence of a one-time occurrence in the past suggests that the prior act of sexual assault was isolated. See *People v Solloway*, 316 Mich App 174, 195; 891 NW2d 255 (2016).

These are the only two factors that weigh against admissibility, as the remaining factors are neutral or weigh in favor of admissibility. The first factor considers the "the dissimilarity between the other acts and the charged crime." *Watkins*, 491 Mich at 487. Defendant argues that his actions against the 11-year-old victim were dissimilar to his actions against the 14-year-old victim because he never asked to have sex with the 11-year-old victim, did not remove the 11-year-old victim's clothing, and only requested to see the 11-year-old victim's penis. These facts, defendant argues, distinguish his actions against the 14-year-old victim because he asked "to play with [the 14-year-old victim's] penis and when [the 14-year-old victim] took his penis out, he performed oral sex." Additionally, he argues, he brought the 14-year-old victim to secluded locations to assault him, which is dissimilar to his conduct with the 11-year-old victim. However,

defendant fails to acknowledge that the prior acts do not have to be identical with the charged offense. *Wade*, ___ Mich App at ___; slip op at 10. It is sufficient for admissibility purposes that both the prior act and the acts underlying his recent convictions involved acts of sexual assault committed against a male child directed at the child's genitalia. Further, the victims were similar in age when the respective sexual assaults occurred, and defendant was introduced to each victim as a girlfriend's "uncle." These facts render the other-acts evidence reasonably similar to the charged offenses.

The fourth factor is "the presence of intervening acts," *Watkins*, 491 Mich at 487, which defendant argues weighs against admissibility because "[t]here is no evidence of intervening acts." However, depending on the circumstances of the case, the lack of intervening acts might weigh in favor of admissibility, not against admissibility. See *People v Hoskins*, 342 Mich App 194, 207; 993 NW2d 48 (2022). Thus, the fact that there was no evidence of intervening acts in this case suggests that the fourth factor is neutral, if not in favor of admissibility.

Defendant concedes that the fifth factor, the reliability of the other-acts evidence, favors admission.

The sixth factor is "the lack of need for evidence beyond the complainant's and the defendant's testimony." *Watkins*, 491 Mich at 487-488. In this case, there was no physical evidence to support the charges of CSC-III against defendant. Defendant argues that the sixth factor favors inadmissibility because there was direct testimony from the 14-year-old victim in the instant case that defendant sexually assaulted him. However, the fact that the prosecution's case heavily relied upon the victim's testimony illustrates the need for additional evidence beyond the victim's testimony. This factor, therefore, weighed in favor of admission.

On balance, and in light of the propensity inference applied in favor of admissibility, *Berklund*, ___ Mich App at ___; slip op at 10, the *Watkins* factors support admission of the 11-year-old victim's testimony. Consequently, the trial court did not abuse its discretion by admitting the other-acts evidence after concluding that the requirements of MCL 768.27b were met, and that the evidence was admissible notwithstanding MRE 403 because the evidence was not unduly prejudicial.[8] As such, defendant is not entitled to appellate relief for this issue.

## C. INEFFECTIVE ASSISTANCE OF COUNSEL

Relatedly, defendant argues that his trial counsel provided ineffective assistance because she did not raise the *Watkins* factors in her written objection to admission of the 11-year-old victim's testimony. Defendant argues that the trial court would have, or reasonably may have, ruled that the MCL 768.27b evidence discussed above was inadmissible had trial counsel offered a more extensive analysis in her brief opposing the prosecutor's notice of intent. We disagree.

---

[8] We acknowledge, as the trial court itself did after trial with the benefit of hindsight, that it perhaps should have cited and discussed the *Watkins* factors in its pre-trial order. Regardless, however, the trial court's order is sufficient to show that it engaged in a considered exercise of discretion before ruling the other-acts evidence admissible.

"Generally, whether a defendant had the effective assistance of counsel is a mixed question of fact and constitutional law." *People v Heft*, 299 Mich App 69, 80; 829 NW2d 266 (2012) (quotation marks and citation omitted). "This Court reviews findings of fact for clear error and questions of law de novo." *Id*. When a *Ginther* hearing is not held by the trial court, however, our review is limited to mistakes apparent on the record. *People v Payne*, 285 Mich App 181, 188; 774 NW2d 714 (2009).

"A criminal defendant has the fundamental right to effective assistance of counsel." *Heft*, 299 Mich App at 80. See also US Const, Am VI; Const 1963, art 1, § 20. "However, it is the defendant's burden to prove that counsel did not provide effective assistance." *Heft*, 299 Mich App at 80. "To prove that defense counsel was not effective, the defendant must show that (1) defense counsel's performance was so deficient that it fell below an objective standard of reasonableness and (2) there is a reasonable probability that defense counsel's deficient performance prejudiced the defendant." *Id.* at 80-81.

Defendant's ineffective assistance of counsel claim depends entirely on his concomitant claim that the trial court abused its discretion by admitting the other-acts evidence. As explained above, however, the trial court did not abuse its discretion by admitting that evidence even when that decision is scrutinized under a full *Watkins* analysis. "Failing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel." *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010). Moreover, we note that trial counsel actually filed a six-page written objection to admission of the other-acts evidence, and she raised several arguments that aligned with at least some of the *Watkins* factors. Under these circumstances, trial counsel cannot be deemed ineffective.

## D. EVIDENTIARY HEARING

Finally, defendant alternatively argues that the trial court erred by denying his request for an evidentiary hearing. Defendant asserts that if this Court concludes that the existing record is insufficient to address his plea-agreement issue or his ineffective-assistance issue regarding MCL 768.27b, this Court should remand to the trial court for an evidentiary hearing to further explore one or both of these issues. We disagree.

"A trial court's decision to hold an evidentiary hearing is generally reviewed for an abuse of discretion." *People v Franklin*, 500 Mich 92, 100; 894 NW2d 561 (2017) (quotation marks and citation omitted). "The facts supporting the grant or denial of an evidentiary hearing are reviewed for clear error, and the application of the law to those facts are reviewed de novo." *Id*.

If the defendant "set[s] forth . . . facts that would require development of a record," *People v Williams*, 275 Mich App 194, 200; 737 NW2d 797 (2007), a court should grant the defendant's request for an evidentiary hearing, see *Ginther*, 390 Mich at 443-444. However, a defendant who fails to meet this factual threshold is not entitled to an evidentiary hearing because he or she has failed to demonstrate "any issue for which further factual development would advance [the] claim." *People v Chapo*, 283 Mich App 360, 369; 770 NW2d 68 (2009).

With regard to the plea-agreement issue, defendant has not set forth sufficient facts that would warrant an evidentiary hearing. According to defendant, the prosecutor's July 2023 e-mail,

which he quoted in his motion for a new trial, constituted a plea offer that he subsequently accepted. However, as we have explained, that e-mail is indicative of on-going plea negotiations, not an affirmative plea offer that was subject to acceptance by defendant. Moreover, defendant disclaimed on the record before trial that he would accept a plea offer from the prosecutor because he instead preferred to proceed to trial. And, defendant has not specifically explained how an evidentiary hearing on this matter would aid his case, beyond mere speculation. Under these circumstances, defendant is not entitled to an evidentiary hearing regarding his plea-agreement issue.

With regard to the MCL 768.27b issue, as we have explained, on appellate review, the trial court did not abuse its discretion by admitting the other-acts evidence under MCL 768.27b. Thus, an evidentiary hearing regarding the substance of trial counsel's objection to the other-acts evidence under MCL 768.27b offers no likelihood of affording defendant relief.[9]

### III. CONCLUSION

There were no errors warranting relief. Accordingly, we affirm.[10]

/s/ Michael J. Riordan
/s/ James Robert Redford
/s/ Sima G. Patel

---

[9] We note that defendant submitted an affidavit from his trial counsel that indicates she adequately represented his interests. The affidavit contains no statements from trial counsel suggesting that she believed her response to admission of the other-acts evidence, or her trial strategy in general, was ineffective. The affidavit also indicates that trial counsel continued to work in his interest even after his appellate counsel assumed responsibility for this case because she laid the foundation for his plea-agreement issue on appeal through her sworn statements. On appeal, defendant provides no explanation that an evidentiary hearing, which would most likely center on testimony from his trial counsel, would necessarily expand the record beyond what was already provided in this affidavit.

[10] After considering this case on a session calendar, for the reasons explained herein, we conclude that a remand for a *Ginther* hearing is unnecessary.

-10-