*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

   Plaintiff-Appellee,

v

JAMES ALLAN CRAYTON, III,

   Defendant-Appellant.

UNPUBLISHED
December 3, 2019

No. 344483
Saginaw Circuit Court
LC Nos. 16-042911-FC
     17-043670-FH

Before: TUKEL, P.J., and SAWYER and RIORDAN, JJ.

PER CURIAM.

Defendant appeals by delayed leave granted[1] seven convictions after his pleas of *nolo contendere*. In LC No. 16-042911-FC, defendant was sentenced as a fourth-offense habitual offender, MCL 769.12, to five years of imprisonment for each of three counts of possession of a firearm during the commission of a felony, second offense (felony-firearm), MCL 750.227b; 24 months to 50 years of imprisonment for possession of a firearm by a convicted felon (felon-in-possession), MCL 750.224f; 5 months to 50 years of imprisonment for carrying a dangerous weapon with unlawful intent, MCL 750.226; and 96 months to 50 years of imprisonment for assault with intent to do to great bodily harm less than murder (AWIGBH), MCL 750.84. He was awarded 410 days jail credit toward the five-year term for the felony-firearm offenses. A charge of assault with intent to murder (AWIM), MCL 750.83, was dismissed *nolle prosequi*. In LC No. 17-043670-FH, defendant was convicted of witness intimidation, MCL 750.122(7)(a), and sentenced to 189 days in jail with credit for 189 days served.

All of defendant's issues raised on appeal challenge the plea-taking procedure that resulted in the minimum 96-month sentence imposed for the AWIGBH conviction. We reject each and affirm.

---

[1] *People v Crayton*, unpublished order of the Court of Appeals, entered September 18, 2018 (Docket No. 344483).

## I. BACKGROUND

Defendant shot the victim who was on a front porch because he felt that the victim had been disrespectful. Defendant then personally threatened the victim's cousin after confirming with the cousin that he intended to testify against defendant.

At the plea hearing, defense counsel told the trial court that the prosecution had offered to reduce the AWIM charge to AWIGBH and recommend that defendant be sentenced to eight years in prison for AWIGBH in exchange for pleas of no contest to the charges in both files. Coupled with five years of imprisonment for felony-firearm, defendant's longest minimum prison sentence would be 13 years. At first, defendant rejected the offer, but after a recess, defense counsel notified the trial court that defendant had reconsidered the plea offer, explaining that defendant may not have understood "the practical side of the plea." Counsel restated the terms of the plea agreement and informed the trial court that he told defendant that he would get one year of jail credit toward the felony-firearm sentences. Counsel explained he had also advised defendant that he could be eligible for parole after serving two-thirds of the sentence, and that he could possibly be released at that point if he had not gotten in trouble while imprisoned. The prosecutor agreed with defense counsel's restatement of the plea agreement, but specifically distanced himself from any statements about parole.

After a second recess, defendant again indicted that he did not want to plead, and stated that he was confused about whether he was facing a 9-year or 13-year minimum. The trial court stated it would not advise defendant on the amount of time that defendant would actually serve, and explained that such a calculation "is not to be a consideration for me at all." The trial court also remarked that it had "no control over what happens" after defendant is remanded to the custody of the Michigan Department of Corrections (MDOC). Defendant then pleaded consistent with the plea offer, and the trial court sentenced him in accordance with the sentencing agreement.

Defendant filed a motion to correct an invalid sentence or to withdraw the plea, and argued that he was entitled to specific performance of the sentence agreement. He wanted the 96-month sentence for AWIGBH reduced to 64 months, complaining that defense counsel's assertion that he would only have to serve two-thirds of the minimum sentence went uncorrected by the prosecution and the trial court. He further argued that he was entitled to resentencing because the trial court misapplied the law when it sentenced him with the understanding that he could earn good-time credits and become eligible for parole before the minimum sentence had run. Lastly, he argued that he should be permitted to reevaluate the plea offer because trial counsel provided ineffective assistance by informing him that he would only have to serve two-thirds of his minimum sentence before becoming eligible for parole. The trial court denied the motion.

## II. ANALYSIS

This Court reviews for an abuse of discretion a trial court's ruling on a defendant's request to withdraw a plea, *People v Wilhite*, 240 Mich App 587, 594; 618 NW2d 386 (2000), and a trial court's ruling on a motion for resentencing, *People v Puckett*, 178 Mich App 224, 227; 443 NW2d 470 (1989). "An abuse of discretion occurs when a court chooses an outcome that

-2-

falls outside the range of reasonable and principled outcomes." *People v White*, 307 Mich App 425, 429; 862 NW2d 1 (2014). "A trial court necessarily abuses its discretion when it makes an error of law." *People v Franklin*, 500 Mich 92, 100; 894 Mich 561 (2017) (quotation marks and citations omitted).

## A. SPECIFIC PERFORMANCE

Defendant faults the prosecution and the trial court for not correcting defense counsel's statement that he would be eligible for parole after serving two-thirds of the minimum sentence. He argues that he was left with the erroneous belief that he would only be required to serve to two-thirds of the 96-month minimum sentence imposed for AWIGBH, i.e., 64 months, and he requests remand for specific performance of the terms of the plea agreement as he understood them. We disagree.

A plea must be knowing and voluntary, which requires a defendant to be made "fully aware of the direct consequences of the plea." *People v Cole*, 491 Mich 325, 333; 817 NW2d 497 (2012) (quotation marks and citation omitted). Those direct consequences include "the penalties to be imposed." *People v Blanton*, 317 Mich App 107, 119; 894 NW2d 613 (2016).

Defendant relies on *Santobello v New York*, 404 US 257; 92 S Ct 495; 30 L Ed 2d 427 (1971), *In re Valle*, 364 Mich 471; 110 NW2d 673 (1961), and *People v Nixten*, 183 Mich App 95; 454 NW2d 160 (1990). In *Santobello*, 404 US at 262-263, the Court concluded that the appropriate remedy for the prosecution's failure to abide by a promise made to induce a plea is either specific performance of the promised agreement or the opportunity for the defendant to withdraw the plea.

In *In re Valle*, 364 Mich at 473-474, the trial court imposed a term of imprisonment of 5 to 15 years after the defendant pleaded guilty with the understanding that the prosecution would not oppose sentencing the defendant to probation and a six-month jail term. Our Supreme Court explained that where the prosecution or the trial court "made a statement which fairly interpreted by the defendant . . . is a promise of leniency, and the assurance is unfulfilled, the plea may be withdrawn and the case proceed to trial." *Id*. at 477-478.

In *Nixten*, 183 Mich App at 97-99, this Court concluded that the prosecution's agreement to ask for a sentence fewer than eight years in general terms demanded specific performance because the prosecution's specific request for a sentence of 7 years, 11 months, and 28 days violated the "spirit" of the agreement. The Court found that specific performance was "the appropriate remedy" under the facts of the case. *Id*. at 99.

The facts of this case do not support defendant's argument. The prosecution acknowledged that defense counsel had correctly described "the core" of the plea offer and that the sentencing agreement was for a total minimum sentence of 13 years. However, the prosecution did not agree with defense counsel's statements about the possibilities of release after serving two-thirds of the minimum sentence. "The People make no comment as it relates to what the Department of Corrections is going to do," the prosecution explained. At no point during the subsequent discussion about the plea deal did the prosecution refer to two-thirds of the minimum sentence or in any way indicate agreement with defense counsel's statement.

Defendant acknowledged the prosecution's position that the minimum sentence was 13 years when he stated his confusion about whether he was facing a 9-year minimum or 13-year minimum. The trial court told defendant that his sentence would be the term of years the trial court ordered, and stated that it would not advise defendant on the amount of time he would actually serve, and professed that it had "no control over what happens" after he was remanded to the custody of the MDOC. Thus, defendant has not shown that he is entitled to resentencing.

## B. LEGAL ERROR

Defendant argues that his sentence is invalid because the trial court misperceived its own legal authority with respect to sentencing. We disagree.

A sentence is not valid when it is based on "a misconception of law." *People v Miles*, 454 Mich 90, 96; 559 NW2d 299 (1997). But defendant has not identified a misconception of law held by the trial court. He asserts that the trial court exposed its legal misunderstanding when it stated: "I have no control over what happens to you after I remand it to the custody of the Department of Corrections." He argues that although the trial court has no authority to exercise with respect to if and when he will be paroled, the court has total control over when he will be eligible for parole because it is the court that sets the minimum sentence—which is precisely the point the trial court made.

Defendant also argues that the record establishes that his sentence is based on a misconception regarding the availability of good-time credit. However, the trial court made no reference to good-time credit, and stated that it was not in any way telling defendant what his "actual amount of time will be," and that such a calculation "is not to be a consideration for me at all." As such, defendant's arguments are without merit.

## C. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant argues trial counsel was ineffective for misleading defendant about the minimum term of imprisonment he would have to serve before he would be eligible for parole. We disagree.

An ineffective assistance of counsel claim is a mixed question of fact and constitutional law. *People v Swain*, 288 Mich App 609, 643; 794 NW2d 92 (2010). Findings of fact are reviewed for clear error, while constitutional questions are reviewed de novo. *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002). "Clear error exists if the reviewing court is left with a definite and firm conviction that the trial court made a mistake." *People v Armstrong*, 490 Mich 281, 289; 806 NW2d 676 (2011). "Effective counsel is presumed, and the defendant bears a heavy burden of proving otherwise." *People v Eloby (After Remand)*, 215 Mich App 472, 476; 547 NW2d 48 (1996). To demonstrate that trial counsel was ineffective, a defendant must establish that counsel's performance "fell below an objective standard of reasonableness" and that counsel's deficient performance affected the outcome of the proceeding. *People v Douglas*, 496 Mich 557, 592; 852 NW2d 587 (2014) (quotation marks and citation omitted). When evaluating an ineffective assistance of counsel claim in the context of a plea agreement, "courts must determine whether the defendant tendered a plea voluntarily and understandingly." *People v Thew*, 201 Mich App 78, 89; 506 NW2d 547 (1993). Failure to explain adequately the

consequences of a plea render the plea "involuntary or unknowing on the basis of ineffective assistance of counsel." *People v Corteway*, 212 Mich App 442, 445; 538 NW2d 60 (1995).

Defense counsel made legally incorrect statements about when defendant would be eligible for parole. However, he cannot show that he suffered prejudice as a result of his counsel's actions. To show prejudice in the context of a plea agreement, the defendant must show that the plea bargaining process would have ended differently if counsel had performed competently. *Douglas*, 496 Mich at 592. "[T]he defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v Lockhart*, 474 US 52, 59; 106 S Ct 366; 88 L Ed 2d 203 (1985). In addition, the defendant must establish an objective likelihood of success at trial. *Id*. at 59-60.

Defendant's argument is predicated on a premise we reject; specifically, that he did not knowingly plead because he was misled into believing that he would only serve two-thirds of the eight-year minimum before becoming parole-eligible. The parties and the trial court discussed at length the meaning of the plea agreement before defendant agreed to it. The prosecution clarified that the minimum sentence was 13 years. The trial court clarified that the sentence imposed would not be based on speculations about how much time defendant would actually serve. Additionally, the trial court clearly told him that "[p]er the sentence agreement, [defendant] would serve a minimum of 96 months in prison and, again, that would be consecutive to the felony firearm five years." And at sentencing, defense counsel asked the trial court to sentence defendant consistent with the terms of the sentencing agreement, which counsel stated were "the mandatory five year . . . on the felony firearm second with credit for time served on that, and the remaining counts will run concurrent for the term of eight years."

Further, it is reasonable to conclude that other considerations impacted defendant's decision to plead. For example, in response to defendant's questions about the sentencing guidelines range, the prosecution stated that the sentencing guidelines range for AWIM was a term of imprisonment of 225 months to 750 months and that the range for AWIGBH was 38 months to 152 months. "The fact that he's HOA fourth takes [the AWIM range] to life," the prosecution clarified.[2] Thus, defendant was informed of his sentencing exposure and the risk he would be talking if he rejected the plea offer.

Additionally, defendant has not argued or established that he would have likely received a shorter sentence had he gone to trial. Sentencing decisions are discretionary. *People v Armisted*, 295 Mich App 32, 51; 811 NW2d 47 (2011). A sentence that falls "within the guidelines range is presumptively proportionate." *People v Powell*, 278 Mich App 318, 323; 750 NW2d 607 (2008). If found guilty of AWIM at trial, defendant faced a minimum sentence ranging from 225 months to 750 months. Even if sentenced at the lowest end of the guideline range, defendant would receive a minimum sentence of 18 years and 9 months. Further, there is nothing in the record to suggest that the trial court would have deviated downward from the guidelines. If a trial had produced a conviction of AWIGBH instead of AWIM, which would be the equivalent of the plea deal, the uncontested prior record and offense variables and

---

[2] The guidelines range for AWIGBH was actually 34 to 134 months.

defendant's fourth-offender habitual offender status show a sentencing guidelines minimum range of 34 to 134 months for the AWIGBH conviction. The 96-month floor of defendant's plea agreement fell squarely within this range.

In sum, defendant has not shown that his counsel was ineffective. He offers nothing indicating that he would have chosen to reject the plea and go to trial in the absence of defense counsel's statement about the possibility of early release. Nor has defendant shown that a trial would have resulted in a lower sentence.

## III. CONCLUSION

Affirmed.

/s/ Jonathan Tukel
/s/ David H. Sawyer
/s/ Michael J. Riordan